**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and Proposed Classes*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DANIEL COHEN and CHRIS ARNET, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

WEST CAPITAL LENDING, INC.,

Defendant.

Case No. 8:26-cv-00496-MRA-JDE

**CLASS ACTION**

**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE TELEPHONE SOLICITATION ACT 47 U.S.C. § 227, ET SEQ. (TCPA)** [1]

**JURY TRIAL DEMANDED**

[1] Amended pursuant to Federal Rule of Civil Procedure 15(a)(1)(2) with Defendant's written consent.

## FIRST AMENDED CLASS ACTION COMPLAINT

1. Plaintiffs, Daniel Cohen and Chris Arnet ("Plaintiffs"), brings this action against Defendant, West Capital Lending, Inc. ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2. This is a class action under the 47 U.S.C. § 227 et seq., the Telephone Consumer Protection Act ("TCPA").

3. Defendant is a mortgage brokerage corporation engaged in providing residential mortgage loans and lender services to consumers throughout the United States, including the State of California.

4. To promote its goods and services, Defendant engages in aggressive unsolicited telemarketing to consumers with no regards for consumers' rights under the TCPA, even after customers opt out from Defendant's messages.

5. Through this action, Plaintiffs seek injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiffs also seek statutory damages on behalf of themselves and members of the classes, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

6. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiffs allege violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs allege a class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seek up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court

jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

7. Venue is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is headquartered in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction and because Defendant provides and markets its services from within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiffs occurred from within the Central District of California and, on information and belief, Defendant has sent the same messages complained of by Plaintiffs to other individuals from within this judicial district, subjecting Defendant to jurisdiction in the Central District of California.

## PARTIES

8. Plaintiff Daniel Cohen is a natural person who, at all times relevant to this action, was a resident of Deschutes County, Oregon.

9. Plaintiff Cohen is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 3418 (the "3418 Number") that received Defendant's text message solicitations.

10. Plaintiff Chris Arnet is a natural person who, at all times relevant to this action, was a resident of Adams County, Colorado.

11. Plaintiff Arnet is, and at all times relevant hereto was, an individual and the sole subscriber of the residential telephone number ending in 3773 (the "3773 Number") that received Defendant's text message solicitations.

12. Defendant is a California corporation whose principal place of business is at 17911 Von Karman Avenue Suite 400, Irvine, CA 92614.

13. Defendant directs, markets, and provides its business activities throughout United States and the State of California.

14. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## FACTS

***Plaintiff Cohen's Experience***

15. Beginning at least in January 2026, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff Cohen's cellular telephone number, from Defendant's multiple telephone numbers.

16. On or about January 12, 2025, Defendant sent multiple unsolicited telemarketing text message to Plaintiff Cohen's 3418 Number from telephone number (949) 979-5319. Plaintiff Cohen replied with clear and unequivocal opt out language, stating "stop", to request that Defendant cease further communications, as shown below:




17. Within seconds after Plaintiff Cohen sent the opt-out request, Defendant responded with an automated text message, acknowledging Plaintiff Cohen's explicit request to opt-out from further communication with Defendant and confirming "You have successfully been unsubscribed. You will not receive any further messages. Reply START to resubscribe" (as shown above).

18. Despite Plaintiff Cohen's unequivocal opt-out request and Defendant's express confirmation that he had "have successfully been unsubscribe", Defendant ignored Plaintiff Cohen's opt-out request and deliberately continued to bombard

Plaintiff Cohen from telephone number (949) 468-2693, with more unwanted telemarketing text messages later that same day, January 12, 2026, prompting Plaintiff Cohen to send yet another "Stop" request, as shown below:




19. Following Plaintiff Cohen's second request to cease all communications, Defendant sent another automated response confirming "You have successfully been unsubscribed. You will not receive any further messages. Reply START to resubscribe" (as shown above).

20. Once again Defendant on January 12, 2026, demonstrating a willful and knowing disregard for Plaintiff Cohne's clearly expressed wishes and Defendant's own explicit promises to cease communications, Defendant sent another unsolicited telemarketing text message, this time from a third phone number (949) 390-5222.

Plaintiff Cohen again replied "Stop" in an effort to cease Defendant's barrage of messages, as show below:




21. Defendant acknowledged this third opt-out request and again confirmed: "You have successfully been unsubscribe. You will not receive any further messages. Reply START to resubscribe", (as shown above).

22. Defendant's continued violations persisted on or about January 19, 2026, when it sent another unsolicited text message from a fourth different phone number, (469) 737-9125, prompting Plaintiff Cohen to send yet another "Stop" request. This pattern demonstrates Defendant's systematic use of multiple phone numbers to

circumvent Plaintiff Cohen's opt-out requests and its deliberate failure to maintain any functional internal do-not-call procedures, as shown below:




23. Seconds after Plaintiff Cohen sent this opt-out message, Defendant once again responded with the same automated confirmation it had sent in response to each prior opt-out request: "You have successfully been unsubscribe. You will not receive any further messages. Reply START to resubscribe" This was Defendant's fourth such promise to cease communications—a promise Defendant repeatedly violated by simply using different phone numbers, as shown above.

***Plaintiff Arnet's Experience***

24. Beginning at least in January 2026, Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff Arnet's cellular telephone number, from Defendant's (949) 535-3875 number.

25. On or about January 7, 2026, Defendant sent multiple unsolicited telemarketing text message to Plaintiff Arnet's 3773 Number from telephone number (949) 979-5319. Plaintiff Arnet replied with clear and unequivocal opt out language, stating "Lose my information" and "Stop contacting me" to request that Defendant cease further communications, as shown below:






26. Despite Plaintiff Arnet's unequivocal opt-out requests, Defendant ignored Plaintiff and deliberately continued to bombard Plaintiff Arnet, with more unwanted telemarketing text messages on January 15, 2026, prompting Plaintiff Arnet to send yet another opt out request that same day, as shown above.

27. Once again Defendant on January 23 and 24, 2026, demonstrating a willful and knowing disregard for Plaintiff Arnet's clearly expressed wishes, Defendant continued to send further unsolicited telemarketing text messages to Plaintiff Arnet. Plaintiff Arnet again replied "I've asked you to opt me out multiple times now. I'm now forwarding this to a lawyer," as show below:



28. Defendant has the capability of immediately complying with Plaintiffs' opt-out requests.

29. As demonstrated by the above screenshots, Defendant does not honor reasonable consumer requests to opt-out of text message solicitations. Indeed, both Plaintiffs attempted to opt-out of Defendant's text message solicitations by telling Defendant not to contact them anymore, but Defendant continued to text message Plaintiffs intentionally disregarding Plaintiffs' instructions in order to solicit the sale of its services and products to Plaintiffs.

30. Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant.

31. Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list. In fact, Plaintiffs, through counsel, made requests to Defendant's counsel for a copy of Defendant's do-not-call list policy, but received no response from Defendant.

32. Defendant failed to place both Plaintiffs on an internal do-not-call list after Plaintiffs' "Stop" opt-out instructions.

33. Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant does not provide training to its personnel engaged in telemarketing on the use and existence of a do-not-call list.

34. Defendant's refusal to honor Plaintiffs' opt-out requests demonstrates that Defendant does not maintain an internal do-not-call list.

35. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiffs as reflected by the fact that both Plaintiff made multiple opt-out requests

and those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

36. These facts strongly suggest that Defendant fails to ensure that requests by Plaintiffs and the Class members to opt-out of future communications are honored within a reasonable time.

37. Indeed, Plaintiffs' and the class members opt-out requests were not honored within a reasonable time from when the opt-out requests were made.

38. Defendant's text messages were transmitted to Plaintiffs' residential cellular telephone, and within the time frame relevant to this action.

39. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., promoting Defendant's lending and mortgage services.

40. The information contained in the text message advertises Defendant's various discounts and promotions, which Defendant sends to promote its business.

41. Upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

42. Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

43. Defendant sent the subject texts from within this judicial district and, therefore, Defendant's violations of the TCPA occurred from within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

44. Defendant's texts were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

45. To the extent that Defendant ever had any consent to contact Plaintiff Cohen for marketing purposes, that extent was expressly revoked on at least January

12, 2026, when Plaintiff Cohen responded multiple times to Defendant with the message "Stop."

46. To the extent that Defendant ever had any consent to contact Plaintiff Arnet for marketing purposes, that extent was expressly revoked on at least January 7, 2026, when Plaintiff Arnet responded to Defendant with the message "Stop contacting me."

47. Plaintiff Cohen is the subscriber and sole user of the 3418 Number and is financially responsible for it.

48. Plaintiff Cohen's 3418 Number is his residential number which he uses for personal purposes.

49. The text messages sent to Plaintiff Cohen originated from the telephone numbers (949) 979-5319, (949) 390-5222, (949)468-2693, (949)751-1445 and (469) 737-9125, numbers which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

50. Plaintiff Arnet is the subscriber and sole user of the 3773 Number and is financially responsible for it.

51. Plaintiff Arnet's 3773 Number is his residential number which he uses for personal purposes.

52. Plaintiff Arnet registered his 3773 Number with the national do-not-call registry on March 12, 2021, and has been registered at all times relevant to this action.

53. The text messages sent to Plaintiff Arnet originated from the telephone number (949) 535-3875, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

54. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of

each message sent to Plaintiffs and the Class members. Defendant also has access to text message logs showing Plaintiffs' and the Class members inbound opt-out requests.

55. Defendant's unwanted telemarketing text messages caused Plaintiffs actual harm, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiffs and caused disruption to their daily lives.

56. Defendant's unwanted telemarketing text messages caused Plaintiffs actual harm. Specifically, Plaintiffs both estimate that they has wasted fifteen to thirty seconds reviewing each of Defendant's unwanted messages. Each time, Plaintiffs had to stop what they were doing to either retrieve their phones and/or look down at the phone to review the message.

57. Next, Plaintiffs wasted approximately fifteen minutes locating and retaining counsel for this case in order to stop Defendant's unwanted text messages. In all, Defendant's violations of the TCPA caused Plaintiffs to waste at least fifteen minutes of their time in addressing and attempting to stop Defendant's solicitations.

## CLASS ALLEGATIONS

### PROPOSED CLASSES

58. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

59. Plaintiffs bring this case on behalf of the following "Classes" defined as follows:

> **National Internal Do Not Call Class: From four years before the filing of the Complaint, all persons in the United States who (1) were sent more than one call (text message and/or voice call) by or on behalf of Defendant within any 12-month period; (2) regarding Defendant's goods or services, to said person's cellular telephone number; and (3) while Defendant did not**

**maintain the required procedures under 47 C.F.R. § 64.1200(d) for maintaining a list of persons who request not to receive such calls.**

**<u>Do Not Call Registry Class</u>: All persons in the United States who from four years prior to the filing of this action (1) were sent a call (text message and/or voice call) on their residential cellular telephone; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) regarding Defendant's products and/or services.**

60. Defendant and its employees or agents are excluded from the Classes. Plaintiffs do not know the number of members in each of the Classes but believes the Class members number in the several thousands, if not more.

61. Also excluded from the Classes are persons who, after making a request to Defendant to not receive future text messages, subsequently affirmatively opted-in to receive text messages from Defendant.

**<u>NUMEROSITY</u>**

62. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to thousands of consumers listed throughout the United States without their prior express consent and/or after they had requested to opt-out. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

63. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's text message records.

**<u>COMMON QUESTIONS OF LAW AND FACT</u>**

64. There are numerous questions of law and fact common to the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the Classes are:

[1] Whether Defendant initiated text messages solicitations to Plaintiff and the Class members;

[2] Whether Defendant violated 47 C.F.R. § 64.1200(d);

[3] Whether Defendant violated 47 C.F.R. § 64.1200(c)

[4] Whether Defendant adhered to requests by class members to stop sending text messages to their telephone numbers;

[5] Whether Defendant keeps records of text recipients who revoked consent to receive texts;

[6] Whether Defendant has any written policies for maintaining an internal do not call list

[7] Whether Defendant's conduct was knowing and willful; and

[8] Whether Defendant is liable for damages, and the amount of such damages.

65. The common questions in this case are capable of having common answers. If Plaintiffs' claim that Defendant routinely transmits telephone solicitations to consumers after they had requested to be opted out, while they were registered on the DNC Registry and at times prohibited by law, Plaintiffs and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**<u>TYPICALITY</u>**

66. Plaintiffs' claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**<u>PROTECTING THE INTERESTS OF THE CLASS MEMBERS</u>**

67. Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes and has retained competent counsel. Accordingly,

Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

**<u>SUPERIORITY</u>**

68. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

69. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Classes, although certain class members are not parties to such actions.

## COUNT I
## <u>VIOLATION OF 47 U.S.C. § 227(c)(2)</u>
## (On Behalf of Plaintiffs and the National Internal Do Not Call Class)

70. Plaintiffs re-allege and incorporate paragraphs 1-69 as if fully set forth herein.

71. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

72. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

73. Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

74. Plaintiffs and the National Internal Do Not Call Class members made requests to Defendant not to receive telemarketing messages from Defendant.

75. Defendant failed to honor Plaintiffs and the National Internal Do Not Call Class members' requests.

76. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

77. Because Plaintiffs and the National Internal Do Not Call Class members received more than one telemarketing message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

78. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiffs and the National Internal Do Not Call Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5).

79. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiffs and the National Internal Do Not Call Class members are entitled to an award of $1,500.00 in statutory damages, for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(c)(5).

80. Plaintiffs and the National Internal Do Not Call Class members also suffered damages in the form of invasion of privacy.

81. Plaintiffs and the National Internal Do Not Call Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**<u>Violation of the TCPA, 47 U.S.C. § 227(c)</u>**
**(On Behalf of Plaintiff Arnet and the Do Not Call Registry Class)**

82. Plaintiff Arnet repeats and realleges the paragraphs 1 through 69 of this Complaint and incorporates them by reference herein.

83. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

84. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

85. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

86. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

87. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Arnet and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

88. Plaintiff Arnet and the Class Members revoked any consent or permission they may have previously provided Defendant by opting out of Defendant's communications.

89. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Arnet and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Arnet and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

90. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiffs as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes;

c) An order declaring that Defendant's actions, set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all text message solicitations made without express written consent, and to otherwise protect the interests of the Classes;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiffs, individually and on behalf of the Classes, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs demand that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the allegations herein.

Dated: June 5, 2026

Respectfully submitted,

By: */s/ Scott Edelsberg*

**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Classes*